George **MAYNARD** and Maxine Maynard, Plaintiffs,

v.

Neal R. **WOOLEY,** Individually and as Chief of Police of Lebanon, New Hampshire, et al.

Civ. A. No. 75–57.

United States District Court,
D. New Hampshire.

Feb. 9, 1976.

---

Richard S. Kohn, New Hampshire Civil Liberties Union, Concord, N. H., Jack B. Middleton, McLane, Graf, Greene, Raulerson & Middleton, Manchester, N. H., for plaintiffs.

Robert V. Johnson, II, Asst. Atty. Gen. for the State of New Hampshire, Concord, N. H., for defendants.

Before COFFIN, Circuit Judge, and GIGNOUX and BOWNES, District Judges.

## OPINION

COFFIN, Chief Judge.

This is an action instituted pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief against the enforcement of NHRSA 262:27–c, which makes it a crime to obscure the words "Live Free or Die" on New Hampshire state license plates. Plaintiffs, George and Maxine Maynard—both Jehovah's Witnesses—state that they have political and religious objections to operating a motor vehicle which displays this motto, and they contend that the enforcement of the New Hampshire statute against them is contrary to the First and Fourteenth Amendments of the United States Constitution. George Maynard has, on three occasions in the past, been arrested, prosecuted, and convicted for violating the statute in question. The plaintiffs seek a declaratory judgment that, as applied to them, NHRSA 262:27–c is contrary to the United States Constitution, an injunction against any future arrests and prosecutions, and an injunction requiring that, in future years, they be issued plates that do not contain the motto "Live Free or Die". The single district judge granted plaintiffs' prayer for a temporary restraining order enjoining future arrests and prosecutions. Because the action seeks an injunction against the enforcement of a state statute on the grounds of its unconstitutionality, a three-judge court was convened pursuant to 28 U.S.C. § 2281.

Since 1969, NHRSA 263:1 has required that all number plates for non-commercial vehicles, with some exceptions, shall have the state motto "Live Free or Die" embossed on them.[1] NHRSA 262:27–c (Supp.1973), makes it a misdemeanor knowingly to obscure the figures or letters on the license plates, and under New Hampshire law, the "letters" include the state motto. *State v. Hoskin*, 112 N.H. 332, 295 A.2d 454 (1972).[2]

---

[1]. The New Hampshire state motto, which is reminiscent of the words of Patrick Henry—"[B]ut as for me, give me liberty or give me death."—derives from the words of Major General John Stark, reputed to have been written in 1809 as part of a toast in a letter to former comrades-at-arms: "Live free or die; death is not the worst of evils." Moore, *A Life of General John Stark of New Hampshire* 500 (1949). New Hampshire adopted "Live Free or Die" as its state motto in 1945, and in 1969, it passed a law requiring that, as of 1971, the motto must appear on most non-commercial plates.

[2]. In *Hoskin*, the New Hampshire Supreme Court held that NHRSA 262:27–c is not repugnant to either the due process clause or the First Amendment of the federal Constitution. In *Hoskin*, unlike the case at bar, the appellants did not contend that the act of covering the motto constituted symbolic speech that is protected by the First Amendment. Their First Amendment argument, which the New

The plaintiffs own two automobiles. Beginning in March or April, 1974, they began covering the "Live Free or Die" on their license plates with tape—usually reflective red tape. Beginning in late 1974 Mr. Maynard was arrested three times for violating NHRSA 262:27–c. His first arrest took place on November 27, 1974. He appeared in Lebanon District Court pro se on December 6, 1974 at which time he explained that he had religious objections to displaying the motto on his license plate.[3] The court found him guilty and fined him $25, but suspended the fine during "good behavior". On December 28, 1974, Mr. Maynard was issued his second summons; and on January 31, 1975, he again appeared in court pro se. He was found guilty, fined $50, and sentenced to the Grafton County House of Corrections for six months. The court suspended the prison sentence. After trial, Maynard advised the court that he would have to refuse to pay the fines, which totalled $75, as a matter of religious conscience. The court then ordered him committed to the House of Corrections for a period of fifteen days. Prior to his incarceration, Mr. Maynard had on January 3, 1975 received his third summons for violating the statute. He was also found guilty by the court of this offense on January 31, 1975, but sentencing was continued. At oral argument, counsel for the state defendants informed us that, in this context, "continued for sentencing" is a final sentence under New Hampshire law. No collateral consequences will attach as a result of it unless Mr. Maynard is arrested and prosecuted for the violation of NHRSA 262:27–c at some time in the future.[4]

## I. The Applicability of the Doctrine of Equitable Restraint

The state defendants contend that we are precluded from considering the constitutional merits of plaintiffs' claim by the doctrine of equitable restraint of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We disagree. *Younger* held that, in all but the most exceptional circumstances, a federal court should refuse to enjoin an ongoing criminal prosecution. Here, however, plaintiffs do not seek to enjoin a pending criminal prosecution. Their primary objective is to obtain declaratory and injunctive relief against future arrests and prosecutions. It is well established that where a federal plaintiff desires protection against threatened state prosecution of a constitutionally protected course of conduct in which he proposes to engage, a federal court can grant equitable relief. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (preliminary injunction); *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (declaratory judgment). We believe that where, as here, the federal plaintiffs assert that enforcement of state laws against them would violate their First and Fourteenth Amendment rights and where, as here, state officials fully intend to enforce those laws, it is entirely appropriate that this court entertain plaintiffs' claim for injunctive relief.[5]

Hampshire Supreme Court rejected, was that the statute in question penalized them for exercising the right, recognized in *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), to be free from a required affirmation of belief.

3. Mr. Maynard states that his religious objection to displaying the state motto is that "[b]y religious training and belief, [he] believe[s] that [his] government—'Jehovah's Kingdom'—offers everlasting life. It would be contrary to that belief to give up [his] life for the state, even if it meant living in bondage." He refuses to be coerced by the state to advertise a slogan which he finds morally, ethically, religiously, and politically abhorrent. Maxine Maynard testified that she shares her husband's views.

4. The time for appeal from Mr. Maynard's convictions had expired before plaintiffs filed the present action on March 4, 1975.

5. The court finds, as the state defendants concede, that both plaintiffs are under a sufficient threat of prosecution to present a justiciable controversy. *See Steffel v. Thompson, supra* at 459, 94 S.Ct. 1209; *Younger v. Harris, supra*, 401 U.S. at 42, 91 S.Ct. 746.

Defendants do not dispute that the *Younger* doctrine permits federal injunctive relief against threatened arrests and prosecutions. Rather, they contend that Mr. Maynard is barred by his failure to appeal any of his three state convictions. For this proposition, they rely upon *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). There, the Court held that the federal plaintiff was barred because it has chosen not to avail itself of its state appellate remedies, but, instead, had instituted suit in the federal court to obtain relief from a state court judgment. *See also Ellis v. Dyson*, 421 U.S. 426, 439–43, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975) (Powell, J., dissenting). *Huffman*, however, is readily distinguishable. *Huffman*, like *Younger*, was a case in which granting the requested injunctive relief would have interfered with the processes of the state court by nullifying prior or pending state court proceedings. Here, no such interference can result. Plaintiffs are not collaterally attacking Mr. Maynard's state court convictions.[6] The relief they seek is purely prospective. Therefore, neither *Younger* nor *Huffman* requires that we stay our hand; indeed, since plaintiffs have demonstrated that they will suffer irreparable harm if we do not intervene and have stated a substantial constitutional claim, it is our responsibility to hear the case. *Cf. Zwickler v. Koota*, 389 U.S. 241, 247, 88 S.Ct. 391, 19 L.Ed.2d 444–48 (1967).

Even if the doctrine of equitable restraint barred Mr. Maynard's suit, we would still have to consider whether it bars Mrs. Maynard's action. She has an ownership interest in the Maynard family cars and, accordingly, is under a separate threat of prosecution. *Cf. Steffel v. Thompson, supra* 415 U.S. at 459, 94 S.Ct. 1209. This is not a situation "in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any of them", *Doran v. Salem Inn, Inc., supra* 422 U.S. at 928, 95 S.Ct. at 2566. *Doran* suggested that such a situation might be presented where plaintiffs are brother-sister corporations related "in terms of ownership, control and management". *Id.* Here, however, each of the Maynards is acting on his or her own independently held religious precepts. There is no suggestion that either controls the actions or beliefs of the other. The relationship between these plaintiffs is thus much closer to the presented in *Steffel v. Thompson, supra.*[7] In our view, therefore, Mr. Maynard's failure to appeal his state convictions could not bar Mrs. Maynard's federal action for protection from future state criminal prosecution.

## II. *The Constitutional Merits*

Plaintiffs' principal contention is that the New Hampshire statutes cannot be enforced against them consistent with

---

**6.** A more plausible position for defendants to take would be that Mr. Maynard's state convictions bar litigation of the federal constitutional issues. Although more plausible, this argument too fails. The first circuit has held that a state criminal conviction will have a preclusive effect in a federal civil rights action only with respect to matters actually litigated and decided at the state criminal trial. *Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975). Since the constitutionality of the state statutes was not litigated by Mr. Maynard in the state misdemeanor proceedings, collateral estoppel principles do not preclude this court from considering this issue.

**7.** In *Steffel*, two persons engaging in antiwar hand-billing outside a shopping center were threatened with state prosecution. One stopped, but the other continued and was arrested and charged with criminal trespass. While this state prosecution was pending, both filed a civil rights action in federal court seeking declaratory relief. The court held that while the one who had been arrested was barred by the *Younger* doctrine, the other remained free to present his federal claim. *See Doran v. Salem Inn, Inc., supra* at 928, 95 S.Ct. 2561.

the First Amendment of the federal Constitution, which, of course, is applicable to the states.[8] They maintain that their act of masking over the words "Live Free or Die" is constitutionally immune from state regulation because this act was done to avoid a required affirmation of belief, under the rule of *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); and because their act constituted symbolic speech, as to which New Hampshire cannot demonstrate a sufficient interest to regulate. *See Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Since we accept plaintiffs' contention that their acts constituted constitutionally protected symbolic speech and that the state cannot prosecute them for masking the motto, we need not consider whether their First Amendment right to be free from a required affirmation of belief is implicated.[9]

■ We begin by identifying the public and private interests that are at stake. Although the act of covering the motto on a license plate may, in some cases, be an act of pure whimsy, it is clear that plaintiffs' act of masking the motto with reflective red tape is motivated by deeply held, fundamentalist religious beliefs that death is an unreality for a follower of Christ and, to a lesser extent, that it is wrong to give up one's earthy life for the state, even if the alternative is living in bondage. Plaintiffs' act of covering the "Live Free or

Die" accomplishes two closely interrelated objectives: it relieves them of the burden of displaying a message which offends their beliefs, and, at the same time and more importantly, it communicates their strong disagreement with implications of the message. We have no doubt that plaintiffs' interest implicates the First Amendment. Whatever else may be said about the motto "Live Free or Die", it expresses philosophical and political ideas. Plaintiffs' desire not to be aligned with these ideas falls within the ambit of the First Amendment.[10]

The state interests promoted by the requirement that New Hampshire passenger cars display license plates bearing this motto are essentially twofold. First, the state believes that the dissemination of the motto and the association of it with New Hampshire serves a number of values: fostering appreciation of state history and tradition; creating state pride, identify, and individualism; and promoting tourism. Second, the presence of the motto on the plates aids in the identification of New Hampshire passenger cars. To permit individuals to mask the "Live Free or Die" on their plates would frustrate the attainment of these objectives. Whether these state interests are sufficient to justify the restriction on plaintiffs' activity will be considered below.

Plaintiffs' contention is that their act of masking the "Live Free or Die" on their license plates constitutes symbolic speech and that the New Hampshire de-

---

8. Plaintiffs also rely upon the due process and equal protection clauses of the Fourteenth Amendment. Because plaintiffs' First Amendment claim is dispositive, we do not address these alternate claims.

9. Judge Bownes would also rest our decision on the ground that NHRSA 262:27–c violates plaintiffs' right to be free from "compelled affirmations of belief".

10. The defendants contend that the significance of "Live Free or Die" is primarily historical and that the motto is, in any event, so ambiguous that any First Amendment interest plaintiffs assert is *de minimis*. We do not deny the historical significance of New Hamp-

shire's motto, but this significance is necessarily related to the philosophical and political ideas that have been so important in American history, *see* note 1 *supra*, but which plaintiffs are not compelled to endorse. Although the vast majority of, if not all other, state mottos seem to lack ideological content, "Live Free or Die" has obvious political and philosophical significance for many. The New Hampshire motto may not be as politically charged as other slogans that might be placed on license plates, e. g., "Amnesty Now", but we can conceive of no neutral principle which would permit us to distinguish "Live Free or Die" from such others.

facement statute, NHRSA 262:27–c, is invalid as applied to them because it is not supported by any state interests that are sufficiently important to justify the restriction of protected expression. We agree.

This claim is based principally on two recent opinions of the United States Supreme Court invalidating state limitations on the exercise of "symbolic speech". In *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 735, 21 L.Ed.2d 731 (1969), the Court held it a violation of the First and Fourteenth Amendments for public school officials to discipline students for wearing black armbands to school in protest of United States involvement in Vietnam. In *Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam), the Court overturned appellant's conviction for "improper use" of an American flag where, in May, 1970, shortly after the invasion of Cambodia and the shootings at Kent State University, appellant had taped a peace symbol onto an American flag and hung it upside down from his window. *See Cline v. Rockingham County Superior Court*, 502 F.2d 789 (1st Cir. 1974). In each case, the Court concluded that the claimant's act was sufficiently imbued with the elements of communication to be within the ambit of the First Amendment and that the state interests relied upon were insufficient to justify the restrictions on the protected expressions.

■ We are satisfied that plaintiffs' acts of covering the motto "Live Free or Die" constitutes symbolic speech within the meaning of *Tinker* and *Spence*. The use of reflective red tape to mask the motto is clearly intended to call attention to the fact that the motto has been obscured and thereby to communicate plaintiffs' disagreement with it. The context of plaintiffs' actions, which is important in determining their communicative quality, *see Spence v. Washington, supra*, 418 U.S. at 410, 94 S.Ct. 2727, is such that plaintiffs' message is likely to be readily understood. New Hampshire citizens are well aware that the motto "Live Free or Die" appears on the license plates of passenger cars registered in that state, and the likelihood is great that they will interpret plaintiffs' obliteration of the motto as an expression of their conscientious objections to its implications.[11] Since plaintiffs' actions are intended as expression and readily perceived as such, we conclude that they are seeking to enjoin "a prosecution for the expression of an idea through activity." *Spence v. Washington, supra* at 411, 94 S.Ct. 2727.[12]

■ Having found symbolic speech, we now consider the sufficiency of New Hampshire's justifications for the statute. In *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), upholding the respondent's conviction for knowing destruction of his draft card, the Supreme Court developed a four-part test for determining whether a government regulation restricting the freedom of expression protected by the First Amendment is justified. The Court stated, *id.* at 377, 88 S.Ct. at 1679:

11. There is, moreover, evidence in the record that, at least since the decision of the New Hampshire Supreme Court in *State v. Hoskin, supra*, handed down in 1972, New Hampshire citizens have been generally aware that individuals like the plaintiffs have been covering the "Live Free or Die" on their licenses plates in order to express their opposition to the motto's implication that political freedom is the greatest good. This consideration supports our conclusion that the likelihood is great that observers will understand the significance of plaintiffs' acts.

12. Defendants contend that it will follow from our holding today that individuals will be free to cover up the mottos on any state's license plate if they can conceive of some possible political or philosophical opposition to the motto. We reject this suggestion. Plaintiffs have succeeded in establishing that symbolic speech is involved in this case because they have shown not only that they intended to convey a message by their act but also that the message was likely to be understood. They were able to make this latter showing principally because the New Hampshire motto itself possesses obvious political and philosophical significance. We doubt that symbolic speech could be shown in this type of a case when the motto has no such significance.

"[W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

We find that the defacement statute fails to meet two of the four components of the *O'Brien* test. The state has asserted that the statute serves two purposes: facilitating vehicle identification and promoting appreciation of history, state pride, individualism, and tourism. The effectuation of these objectives is within the constitutional power of the state and furthers important and substantial governmental interests. These justifications, however, fail to satisfy the third and fourth requirements of the *O'Brien* test.

The defacement statute furthers the New Hampshire interest in promoting appreciation of history, state pride, and tourism by preventing individuals from covering over the motto and thereby ensuring the widest possible dissemination of the message contained therein. This interest is directly related to the suppression of free expression within the meaning of *O'Brien*. Although a government may perhaps single out certain messages for special protection when they appear on public property, *see Spence v. Washington, supra* 418 U.S. at 408–409, 94 S.Ct. 2727, *Spence* teaches that the governmental interest in preventing individuals from interfering with the communication of the state sponsored message by engaging in symbolic expression is not an interest that meets the third requirement of the *O'Brien* test. *See* Ely, *Flag Desecration: A Case Study in the Roles of Categorization and Balancing in First Amendment Analysis,* 88 Harv.L.Rev. 1482, 1506–08 (1975). In *Spence* the Court indicated that the state interest in preventing interruption of the set of messages conveyed by the flag was directly related to the suppression of free expression. 418 U.S. at 412–14 & n. 8, 94 S.Ct. 2727. The fact that plaintiffs' act, unlike that of the defendant in *Spence,* is the only practical alternative to displaying the motto indicates that the statute and the suppression of freedom of expression are even more closely related in the present case than in *Spence.*

Second, even if the statute's other objective—requiring that "Live Free or Die" appear on all cars in order to facilitate identification of New Hampshire passenger vehicles—might be considered unrelated to speech, this purpose clearly fails the fourth requirement of *O'Brien* : the defacement statute's effect on plaintiffs' First Amendment freedoms is certainly "greater than is essential to the furtherance of that interest". It cannot be seriously contended that the state of New Hampshire has, to use the words of *O'Brien, supra,* 391 U.S. at 381, 88 S.Ct. 1673, no alternative means that would more precisely and narrowly assure preservation of its interest in facilitating vehicle identification. Surely it need not structure its system of vehicle identification so that individuals will have to display a motto to which they are philosophically opposed. That the presence of this motto on the license plates is required for identification is belied by the fact that only passenger cars are required to have license plates that contain the motto "Live Free or Die".[13]

---

**13.** Defendants suggest that, whatever the merits of placing "Live Free or Die" on the license plates, for the present the motto is needed to distinguish plaintiffs' automobile from automobiles that have no motto on their plates but have the same identification number. However, the state defendants have not shown that any New Hampshire non-passenger motor vehicles have the same identification number as plaintiffs' and there is evidence in the record suggesting that none do. So, even assuming *arguendo* that this would be a sufficient justification, defendants have not satisfied their burden.

Since New Hampshire's interest in the enforcement of its defacement statute is not sufficient to justify the restriction on plaintiffs' constitutionally protected expression,[14] we hold that as applied to plaintiffs NHRSA 262:27–c abridges the rights protected by the First and Fourteenth Amendments.

III. *Relief*

For the reasons stated above, defendants are enjoined from arresting and prosecuting plaintiffs at any time in the future for covering over that portion of their license plates that contains the motto "Live Free or Die". Although there is evidence that New Hampshire could easily issue plaintiffs license plates that do not contain the motto—the state presently manufactures vanity plates to order at a cost of $5—we decline to issue an injunction ordering the state officials to do so. The relief we have ordered should fully protect plaintiffs in the exercise of their First Amendment rights, and we would be ill-advised to interfere further with the operation of New Hampshire's system of vehicle identification.

*So ordered.*

---

**14.** The fact that defendants have not satisfied the *O'Brien* test is not necessarily dispositive of the statute's invalidity. *See Spence v. Washington, supra,* 418 U.S. at 414 n. 8, 94 S.Ct. 2727; Ely, *supra* at 1496–97. It is implicit in the foregoing discussion, however, that neither of the interests New Hampshire has identified is sufficiently weighty to justify the interference with plaintiffs' protected expression.

Defendants also argue that the New Hampshire defacement statute effects such minimal interference with the values protected by the First Amendment that the state's otherwise insufficient justifications should be deemed sufficient for this case. The core of defendants' submission is that plaintiffs have equally effec-tive alternative means of conveying their message: they could place bumper stickers near the plates which express their disagreement with the motto. We reject this argument. *Spence v. Washington, supra,* summarily rejected the contention that the free expression claim should fail since it was "miniscule and trifling" in view of the thousands of other available means of disseminating the views. One may not have his liberty of expression in an appropriate place abridged on the ground that the message could be conveyed in an alternative way. 418 U.S. at 411 n. 4, 94 S.Ct. 2727. *See Cohen v. California,* 403 U.S. 15 (1971); *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939).