United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 2, 1997 Decided October 17, 1997

 No. 96-7041

 John Stanton, 

 Appellant

 v.

 District of Columbia Court of Appeals, 

 Appellee

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 95cv01952)

 John Stanton, appearing pro se, argued the cause and filed 
the briefs for appellant.

 Richard M. Wyner argued the cause for appellee. With 
him on the brief were Jo Anne Robinson, Interim Corpora-
tion Counsel, Charles L. Reischel, Deputy Corporation Coun-
sel, and Donna M. Murasky, Assistant Corporation Counsel.


 Before: Wald, Williams and Ginsburg, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Williams.

 Williams, Circuit Judge: This case is the latest episode in 
a serial dispute between appellant John Stanton and the 
District of Columbia Court of Appeals ("DCCA"). Having 
been suspended from the bar under rules that did not auto-
matically restore him on the lapse of his suspension, Stanton 
has thrice petitioned the DCCA for reinstatement. While the 
third petition was pending with that court, he filed suit in 
federal court posing constitutional challenges both to the 
substantive provisions of the D.C. Rules of Professional Con-
duct (with which an applicant for reinstatement must be 
ready to comply in order to show fitness to practice), and to 
the procedures governing reinstatement.

 The district court dismissed the claim on grounds of ab-
stention under Younger v. Harris, 401 U.S. 37, 43-54 (1971), 
because of the pending proceeding in the D.C. judicial sys-
tem. But the Younger abstention has now been mooted by 
the end of that proceeding, In re Stanton, 682 A.2d 655 (D.C. 
1996), cert. den., 66 U.S.L.W. 3221-22 (U.S. Oct. 7, 1997) (No. 
96-1947). So we would ordinarily vacate the district court's 
abstention disposition and remand the case. See Wood v. 
Several Unknown Metropolitan Police Officers, 835 F.2d 340, 
342-44 (D.C. Cir. 1987). Before doing so, however, we first 
inquire whether there are alternate grounds for affirming the 
dismissal. Id. at 343 (evaluating res judicata effect of con-
cluded D.C. proceeding on appeal from Younger abstention). 
Cf. Helvering v. Gowran, 302 U.S. 238, 245 (1937) (holding 
that "if the decision below is correct, it must be affirmed, 
although the lower court relied upon a wrong ground or gave 
a wrong reason"). Here the DCCA argues that we should 
affirm either because the district court lacked jurisdiction by 
virtue of the Rooker-Feldman doctrine's proscription of infe-
rior federal court review of state judgments, or because 
Stanton's claims were barred by issue or claim preclusion. 
We find that Rooker-Feldman is indeed fatal to Stanton's 
substantive claim, but that neither it nor any preclusion 


doctrine disposes of the procedural claims. Accordingly we 
affirm in part and reverse in part.

 

 * * *

 On November 30, 1983 the DCCA issued two orders sus-
pending Stanton from the practice of law. In both cases it 
found Stanton guilty of "neglect of a legal matter entrusted to 
him," in violation of then-applicable Disciplinary Rule ("DR") 
6-101(A)(3), and "intentional failure to seek a client's lawful 
objectives," in violation of DR 7-101(A)(1). The DCCA or-
dered concurrent suspensions of a year and a day, In re 
Stanton, 470 A.2d 272 (D.C. 1983) ("Stanton I"), and of 60 
days, In re Stanton, 470 A.2d 281 (D.C. 1983) ("Stanton II"). 
The details of the incidents leading to the suspensions are set 
out in the reports of the D.C. Board on Professional Respon-
sibility, published with the suspension orders. The deficien-
cies recounted include failure to seek bond reviews at the 
request of clients (evidently extending the clients' pre-trial 
time in jail), failure to talk with clients about their cases, 
failure to investigate clients' cases, and finally, failure to 
assist clients who wished to plead guilty in their efforts to do 
so. The extra day of Stanton's year-and-a-day suspension is 
critical. Under rules then prevailing and continuing to gov-
ern attorneys suspended at that time, attorneys suspended 
for more than one year are not automatically restored to the 
bar on the lapse of their suspensions, but are required to file 
a petition for reinstatement; if denied reinstatement they 
may file their next petition no sooner than a year after the 
denial.1 Stanton's reinstatement petitions having been uni-
formly denied, see In re Stanton, 532 A.2d 95 (D.C. 1987) 
("Stanton III"); In re Stanton, 589 A.2d 425 (D.C. 1991) 
("Stanton IV"); In re Stanton, 682 A.2d 655 (D.C. 1996) 
("Stanton V"), he remains under suspension.

__________
 1 Current D.C. Bar Rule XI s 16(c) provides that reinstatement 
of attorneys suspended for more than one year prior to September 
1, 1989 is governed by the requirements in effect at the time of the 
suspension. Accordingly, Stanton's case is governed by Rule XI 
s 21 of the prior rules.


 Since the original year-and-a-day suspension, Stanton has 
filed many actions in local and federal courts, all so far 
unavailing. In the present case, he asserts three claims. 
First, he argues that certain of D.C.'s Rules of Professional 
Conduct, successors of the rules he was originally found to 
have violated, deprive D.C. bar members of rights of free 
expression protected by the First Amendment. He specifical-
ly attacks Rule 1.2(a), insofar as it requires that in "a criminal 
case, the lawyer shall abide by the client's decision, after 
consultation with the lawyer, as to a plea to be entered," and 
Rule 1.3(a), which requires that a "lawyer shall represent a 
client zealously and diligently within the bounds of the law." 
As we shall see, these claims appear to be comprehensible--if 
at all--only in the context of Stanton's personal quarrel with 
the DCCA over the lawyer's role in the plea process.

 In the procedural counts of his complaint, Stanton claims 
that the composition and procedures of the D.C. Board on 
Professional Responsibility violate the due process clause. 
(Stanton does not say, but he presumably means the due 
process clause of the Fifth Amendment, as it is that which 
applies to D.C.) On all three claims Stanton seeks declarato-
ry relief.

 * * *

 Because it is jurisdictional, we first consider the Rooker-
Feldman doctrine, set forth in Rooker v. Fidelity Trust Co., 
263 U.S. 413, 415 (1923), and District of Columbia Court of 
Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine is 
drawn from 28 U.S.C. s 1257, which channels directly to the 
Supreme Court all federal review of judicial decisions of state 
(and D.C.) courts of last resort. By making clear that the 
inferior federal courts lack jurisdiction over such decisions, 
Rooker-Feldman ensures that the Court's appellate jurisdic-
tion is exclusive. See Feldman, 460 U.S. at 482. That 
Stanton's now-completed third reinstatement proceeding was 
judicial in nature is clear and undisputed. See, e.g., Richard-
son v. District of Columbia Court of Appeals, 83 F.3d 1513, 
1514 (D.C. Cir. 1996); see generally Feldman, 460 U.S. at 
476-81.


 In promulgating rather than applying bar rules, however, 
the DCCA acts in a legislative rather than a judicial capacity. 
Accordingly, a district court confronted with a simple chal-
lenge to the validity of such rules "is not reviewing a state-
court judicial decision" and thus has subject matter jurisdic-
tion. Feldman, 460 U.S. at 486. Applying Rooker-Feldman 
requires us to draw a line between permissible general chal-
lenges to rules and impermissible attempts to review judg-
ments. And Feldman also tells us that even a constitutional 
claim pled as a general attack may be so "inextricably inter-
twined" with a state court decision that "the district court is 
in essence being called upon to review the state-court deci-
sion." Id. at 483-84 n.16; see also id. at 486-87.

 How to detect the fatal "intertwining"? In Feldman itself 
plaintiffs attacked both a general rule of the DCCA and the 
refusal of that court to grant plaintiffs a waiver. The Court 
found the attack on the rule independent enough, noting that 
the rule did not even contemplate the waiver procedure that 
plaintiffs claimed had been applied unevenly. Id. at 487-88 & 
n.18. Thus, as we said in Richardson, "the core of plaintiffs' 
generalized challenge was independent of the specific decision 
to deny a waiver." 83 F.3d at 1515 (emphasis added). Cf. 
Levin v. Attorney Registration and Disciplinary Comm'n of 
the Supreme Court of Ill., 74 F.3d 763, 766 (7th Cir. 1996) 
(distinguishing "between plaintiffs who claim their injuries 
are directly attributable to an erroneous state court decision 
and plaintiffs who claim injury independent of any state court 
judgment"); see also GASH Associates v. Village of Rose-
mont, 995 F.2d 726, 728 (7th Cir. 1993); David P. Currie, "Res 
Judicata: The Neglected Defense," 45 U. Chi. L. Rev. 317, 
324-25 (1977).

 None of Stanton's three claims lends itself to easy classifi-
cation. The First Amendment count's assertion that Rules 
1.2(a) and 1.3(a) "restrict and curtail expression and practice 
of the dissident," Complaint p 22, seems to pose a general 
challenge. And Stanton's request for a declaration that the 
rules are "in violation of the federal right to freedom of 
expression," id. p. 6, bespeaks a claim independent of his 


personal situation. Cf. Centifanti v. Nix, 865 F.2d 1422, 1429 
(3rd Cir. 1989) (noting plaintiff's quest for declaratory relief as 
well as generalized character of the injunction sought). But 
the Complaint stresses that the Board on Professional Re-
sponsibility--which initially handles petitions for reinstate-
ment and forwards its findings and recommendations to the 
DCCA--was at the time of Stanton's federal complaint rec-
ommending denial of reinstatement "because of [plaintiff's] 
strongly-held philosophical opinions and beliefs regarding 
guilty pleas in criminal prosecutions." Complaint p 21. Stan-
ton's "belief," which he thinks these rules unconstitutionally 
trammel, appears to be that a lawyer's advocacy of a guilty 
plea somehow denies the accused his rights "to freedom from 
involuntary self-incrimination and to assistance of counsel." 
Id. The only intelligible reading of Stanton's complaint is as 
a claim that the Board's negative recommendation grew out 
of the challenged rules. (The Board's findings and recom-
mendations have not been filed in this case.) Partly because 
Stanton's pleading and briefing leave us somewhat baffled at 
how any facial First Amendment attack on the two rules 
might be framed, we conclude that there is no substance to 
Stanton's First Amendment claim other than his challenge to 
the DCCA's application of the disciplinary rules in his case. 
Thus the "core" of the claim cannot be considered indepen-
dent of the DCCA's adoption of the Board's specific recom-
mendation. See Stanton V, 682 A.2d at 656-68; see also 
Richardson, 83 F.3d at 1515. Because the First Amendment 
claim is inextricably intertwined with that judgment, we hold 
that the district court lacked subject matter jurisdiction over 
this count of the complaint and affirm its dismissal.

 Stanton's articulation of his procedural theories is also 
multidirectional. On the one hand he notes that the DCCA 
has processed his reinstatement petitions under what he says 
are defective procedures, Complaint p 6, and he devotes a 
good deal of energy to claiming that the operations of the 
Board, presumably as manifested in its proceedings on his 
many petitions, violate D.C. law (evidently believing, contrary 


to any number of cases,2 that a state's violation of its own 
procedures is ipso facto a violation of the federal Constitu-
tion), Complaint WW 10-14. But on the other hand much of his 
complaint is framed in very general terms, attacking the 
absence of notice to the public in the process of appointing 
Board members, id. p 9, and challenging what he characteriz-
es as the unduly "limited review" powers of the DCCA over 
the Board, id. p 18. These contentions seem perfectly able to 
stand on their own feet, as would any facial challenge to 
agency rules brought under the relatively relaxed ripeness 
requirements of Abbott Laboratories v. Gardner, 387 U.S. 136 
(1967). Because a discernible core of these claims stands 
independent of the DCCA's past rulings on Stanton's efforts 
at reinstatement, we believe that Rooker-Feldman does not 
deprive the district court of jurisdiction over them.

 

 * * *

 We now turn to the DCCA's arguments that the judgments 
in those proceedings bar the current challenges, either on the 
ground that Stanton raised them and lost on the merits (issue 
preclusion), or on the ground that they were part of his 
earlier claims, so that he is barred for failure to raise them 
then (claim preclusion). At the outset Stanton objects that 
the DCCA did not plead res judicata before the trial court 
and hence cannot do so before us. Res judicata is an 
affirmative defense that may be lost if not pleaded in the 
answer; it may not ordinarily be asserted for the first time 
on appeal. See Poulin v. Bowen, 817 F.2d 865, 869 (D.C. Cir. 
1987); Federal Rule of Civil Procedure 8(c).

 This case, however, comes to us following the DCCA's 
successful pre-answer motion to dismiss under Rules 12(b)(1) 
and 12(b)(6); no answer has yet been filed. Cf. Harris v. 
U.S. Department of Veterans Affairs, No. 96-5091 (D.C. Cir. 
Oct. 10, 1997) (where answer had been filed without raising a 
Rule 8(c) defense, the defendant could not raise it without 
securing leave to amend answer). It is true, of course, that 

__________
 2 See, e.g., Estelle v. McGuire, 502 U.S. 62, 67 (1991); Brandon v. 
District of Columbia Board of Parole, 823 F.2d 644, 649 (D.C. Cir. 
1987); see also Snowden v. Hughes, 321 U.S. 1, 11 (1944).


courts have allowed parties to assert res judicata by disposi-
tive motions under these rules. See, e.g., Westwood Chemi-
cal Co., Inc. v. Kulick, 656 F.2d 1224, 1227 (6th Cir. 1981) 
(citing cases); Riddle v. National Railroad Passenger Corp., 
869 F. Supp. 40, 42 (D.D.C. 1994) (granting motion to dismiss 
on res judicata grounds); McLaughlin v. Bradlee, 599 
F. Supp. 839, 850 (D.D.C. 1984) (granting 12(b)(6) motion on 
res judicata grounds). Thus the DCCA did have an opportu-
nity to make this argument below. Yet if a party that fails to 
assert res judicata in a Rule 12(b)(6) motion is sleeping on its 
rights, it is an inconsequential catnap; we know of no case in 
which a court has prevented a party from pleading res 
judicata in its answer simply because it failed to do so in an 
earlier motion to dismiss. Cf. English v. Dyke, 23 F.3d 1086, 
1090 (6th Cir. 1994) (holding that failure to raise qualified 
immunity defense in pre-answer motion does not waive right 
to assert it on post-answer motion). (Indeed, had the DCCA 
asserted res judicata in its motions, the District Court, cor-
rectly resolving jurisdictional questions first, would not have 
been able to reach the issue.) If prevented from making its 
res judicata arguments to us on this appeal, the DCCA could 
simply present them in its answer on remand.

 We can conceive of no reason for such judicial volleyball. 
Stanton, who argues the question of res judicata forcefully in 
his reply brief, Reply Br. at 6-9, suggests no way in which 
our resolution of the issue on appeal would prejudice him. 
And while res judicata exists in part to shield parties from 
duplicative and vexatious litigation, the interests that courts 
protect are also often their own--or, more precisely, those of 
society. " 'Courts today are having difficulty giving a litigant 
one day in court. To allow that litigant a second day is a 
luxury that cannot be afforded.' " National Treasury Em-
ployees Union v. I.R.S., 765 F.2d 1174, 1177 (D.C. Cir. 1985) 
(quoting C. Wright, Law of Federal Courts 678 (4th ed. 1983)).

 As res judicata belongs to courts as well as to litigants, 
even a party's forfeiture of the right to assert it--which has 
not happened here because the defendant remains free to file 
an answer--does not destroy a court's ability to consider the 


issue sua sponte. See Nixon v. United States, 978 F.2d 1269, 
1297 (D.C. Cir. 1992) (Henderson, J., concurring); cf. Bech-
told v. City of Rosemount, 104 F.3d 1062, 1068 (8th Cir. 1997) 
(appellate court may raise res judicata sua sponte to affirm 
district court); Russell v. SunAmerica Securities, Inc., 962 
F.2d 1169, 1172 (5th Cir. 1992) (same). In the circumstances 
of this case, where there is no prejudice to the plaintiff, no 
forfeiture has yet occurred, the relevant facts stand uncontro-
verted in the record before us, and denial would only engen-
der delay, we are willing to consider the defense for the first 
time on appeal.

 We give judgments of other courts the same preclusive 
effect as would the issuing court--in this case, the D.C. Court 
of Appeals. See 28 U.S.C. s 1738; Matsushita Elec. Indus-
trial Co. v. Epstein, 116 S. Ct. 873, 877 (1996). The DCCA 
(as litigant before us) suggests that in its adjudication of 
Stanton's reinstatement petitions, it has already declared his 
current constitutional claims barred by res judicata. The 
decisions do not in fact do so.

 The DCCA has considered and rejected three of Stanton's 
reinstatement petitions. See Stanton III; Stanton IV; Stan-
ton V. In the first and third of these, Stanton raised consti-
tutional arguments that the court refused to consider on res 
judicata grounds. See Stanton III, 532 A.2d at 96; Stanton 
V, 682 A.2d at 656 n.4. But, although the petitions were for 
reinstatement, the challenges that the DCCA barred under 
res judicata were ones directed at the original suspension 
proceeding, proposing by way of relief that the suspension 
order be vacated or rescinded. And each was held precluded 
by Stanton's failure to raise it as a defense at his suspension 
hearing. The claims now before us, by contrast, are directed 
at general aspects of the reinstatement proceedings and seek 
only prospective relief. The DCCA has not considered them. 
We thus conduct our own inquiry into whether D.C. res 
judicata principles preclude them.

 First, we note that because the D.C. courts have never 
considered Stanton's due process claims on the merits, there 
is no possibility that issue preclusion would bar them. Issues 


may be deemed identical even though their factual contexts 
and underlying claims differ. See Restatement (Second) of 
Judgments s 27 comment c (1982) (factors suggesting identi-
ty of issues include overlap between evidence and argument 
to be advanced, application of same rule of law, and relation 
between claims involved). Thus Stanton's current attacks on 
the reinstatement procedures could involve the same issues as 
his earlier attacks on the suspension procedures. But the 
decisions in Stanton III and Stanton V rejected the chal-
lenges because of Stanton's failure to raise them in the 
suspension proceedings, not because of any prior merits 
rejection--i.e., applying claim preclusion, not issue preclusion. 
Thus, assuming that there was sufficient identity in principle 
between Stanton's due process attacks on D.C.'s suspension 
procedure and those on its reinstatement procedure for issue 
preclusion to be even conceivable, the lack of merits consider-
ation defeats any application of issue preclusion.

 The general principle of claim preclusion is that a final, 
valid judgment on the merits precludes any further litigation 
between the same parties on the same cause of action.3 
Jurisdictions differ as to its reach largely because they start 
from different understandings of the scope of a "cause of 
action." The District of Columbia, like the majority of juris-
dictions, has adopted the Second Restatement's "transaction-
al" approach under which a " 'cause of action,' for purposes of 
claim preclusion, comprises 'all rights of the plaintiff to 
remedies against the defendant with respect to all or any part 
of the transaction, or series of connected transactions, out of 
which the action arose.' " Smith v. Jenkins, 562 A.2d 610, 
613 (D.C. 1989) (quoting Restatement (Second) of Judgments 
s 24(1) (1982)). "What factual grouping constitutes a 'trans-
action' and what groupings constitute a 'series,' " the Restate-
ment continues, "are to be determined pragmatically," consid-
ering "whether the facts are related in time, space, origin, or 
motivation, whether they form a convenient trial unit, and 
whether their treatment as a unit conforms to the parties' 

__________
 3 "Cause of action" and "claim" alternate throughout the caselaw. 
We use them interchangeably, following the cases discussed.


expectations or business understanding or usage." Id. at 
s 24(2).

 Admonitions to pragmatism do not decide cases, and this 
standard is obviously far from self-explanatory. Nor have 
the D.C. courts specifically articulated how they would treat a 
plaintiff's general prospective challenge to procedural rules 
that governed prior proceedings in which the plaintiff could 
have raised identical points. We thus look for guidance to 
broader principles of claim preclusion, and here the federal 
courts are instructive.4

 Federal law is clear that post-judgment events give rise to 
new claims, so that claim preclusion is no bar. Thus, if the 
plaintiff alleges a combination in restraint of trade, a new 
cause of action accrues each time it operates against him, and 
previous judgments do not bar repeated challenges. Lawlor 
v. Nat'l Screen Service Corp., 349 U.S. 322, 327-28 (1955) 
(1943 judgment against plaintiff's antitrust claims does not 
bar claims for identical conduct occurring thereafter). See 
also Cellar Door Productions, Inc. v. Kay, 897 F.2d 1375, 
1377-78 (6th Cir. 1990); Page v. United States, 729 F.2d 818, 
820 (D.C. Cir. 1984). But see Peugeot Motors of America, 
Inc. v. Eastern Auto Distributors, Inc., 892 F.2d 355, 359 (4th 
Cir. 1989) (holding that continued application of policies chal-
lenged in prior litigation does not create new cause of action).

 Similarly, each successive enforcement of a statute--such 
as each year a taxpayer is subjected to a tax--creates a new 
cause of action. Commissioner v. Sunnen, 333 U.S. 591, 597-

__________
 4 The D.C. law of claim preclusion does not differ significantly 
from the federal. D.C. courts articulating the doctrine commonly 
cite federal cases applying federal law. See, e.g., Smith v. Jenkins, 
562 A.2d 610, 613 (D.C. 1989) (quoting Lawlor v. Nat'l Screen 
Service, 349 U.S. 322, 326 (1955)); Stutsman v. Kaiser Foundation 
Health Plan of the Mid-Atlantic States, 546 A.2d 367, 370 (D.C. 
1988) (citing Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 
1984)). We have said that "we can discern no material differences 
in the District of Columbia's law of res judicata and the federal 
common law of res judicata." U.S. Industries, Inc. v. Blake Con-
struction Co., 765 F.2d 195, 204 n.20 (D.C. Cir. 1985).


99 (1948). And a number of cases hold that a criminal 
conviction under a statute leaves the defendant free not only 
to invoke new constitutional defenses against the statute in a 
subsequent criminal case but also to initiate an action seeking 
declaratory or injunctive relief against future applications of 
the statute. See Brown v. Scott, 462 F. Supp. 518, 520 (N.D. 
Ill. 1978) (holding that guilty plea will not prevent defendant 
from asserting statute's unconstitutionality in suit for declara-
tory judgment on future prosecutions, and noting that the 
plea would not bar the defense in a trial for a later violation), 
rev'd on other grounds, 602 F.2d 791 (7th Cir. 1979), aff'd sub 
nom. Carey v. Brown, 447 U.S. 455 (1980); Mustfov v. 
Superintendent of Chicago Police Dep't, 733 
F. Supp. 283, 292 (N.D. Ill. 1990); Maynard v. Wooley, 406 
F. Supp. 1381, 1385 n.6 (D.N.H. 1976), aff'd Wooley v. May-
nard, 430 U.S. 705 (1977); cf. Wooley, 430 U.S. at 710 
(distinguishing between suits requesting prospective and ret-
rospective relief under Younger doctrine).

 In civil litigation, too, parties may raise new issues in 
actions seeking to alter the playing field for future litigation, 
despite failure to raise them in past retrospective lawsuits. 
Thus in Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 
86 (2d Cir. 1997), the Second Circuit held that claim preclu-
sion did not bar a suit for a declaration that a New York 
statute was unconstitutional, where plaintiff had previously 
been held liable under the statute and could have raised 
unconstitutionality as a defense. Cf. Family Division Trial 
Lawyers of the Superior Court-D.C., Inc. v. Moultrie, 725 
F.2d 695, 704 (D.C. Cir. 1984) (observing that "we might 
hesitate" to apply claim preclusion to constitutional attacks 
that a party "could have brought but did not" in litigation 
over past transactions).

 Given these precedents, Stanton's participation in prior 
proceedings in which facial challenges could have been raised 
does not prevent him from raising those challenges now, so 
long as they concern post-judgment events. And in fact they 
do: the procedures that he assails will govern future petitions 
for reinstatement. To put the conclusion into the standard 
"cause of action" language: Litigation of the validity of one 
past course of conduct is not the same "claim" as either (1) 


litigation over the validity of similar conduct occurring after 
the acts covered by the initial litigation (see Lawlor, 349 U.S. 
at 327-38; Sunnen, 333 U.S. at 597-600); or (2) litigation 
challenging a rule in anticipation of its possible application to 
similar events occurring or expected to occur after the earlier 
lawsuit (see Interoceanica, 107 F.3d at 90-91; Maynard, 406 
F. Supp. at 1385 n.6; Brown, 462 F. Supp. at 520).

 We needn't consider here whether claim preclusion ever 
permits two successive facial attacks on a statute. In charac-
terizing the enactment of an ordinance as the "transaction" 
giving rise to a facial challenge, one court has concluded that 
at least the normal result would be a bar. J.B.K., Inc. v. City 
of Kansas City, 641 F. Supp. 893, 900 (W.D. Mo. 1986). 
Assuming the correctness of that view, it may seem anoma-
lous that a party litigating successive applications should be 
afforded greater leeway to discover new theories as time and 
circumstances march on. One answer might be that a party 
raising a facial challenge has enjoyed exceptional freedom to 
select the time (and perhaps forum) of litigation, and should 
reasonably be viewed as seeking a judgment on all future 
applications, except as future facts may vary. By contrast, 
one should perhaps be free to litigate a specific denial without 
the lawsuit's acquiring such an omnivorous (and costly) char-
acter. Of course a party who falsely packaged successive 
facial attacks in successive retrospective litigations would run 
the risk of the court's penetrating his cover. Here, however, 
we have the standard case of an initial facial attack following 
prior retrospective litigation, since the portions of Stanton's 
complaint that survive Rooker-Feldman are necessarily free 
of particularized and retrospective elements drawn from his 
special circumstances.

 We find that neither Rooker-Feldman nor claim preclusion 
bars Stanton's due process claims. Accordingly, while we 
affirm the district court's dismissal of the First Amendment 
claim, on Rooker-Feldman rather than Younger grounds, we 
reverse the judgment regarding Stanton's procedural claims 
and remand the case for further proceedings consistent with 
this opinion.

 So ordered.