**T. Carlton RICHARDSON, Appellant**

**v.**

**DISTRICT OF COLUMBIA COURT OF APPEALS, Appellee.**

No. 95–7211.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 7, 1996.

Decided May 24, 1996.

Rehearing Denied June 10, 1996.

---

T. Carlton Richardson, appearing pro se, argued the cause and filed the briefs for appellant.

Martin B. White, Assistant Corporation Counsel, with whom Charles F. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, Washington, D.C., were on the brief, argued the cause for appellee.

Before: WILLIAMS, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Faced with disciplinary proceedings in Florida, T. Carlton Richardson petitioned the Supreme Court of Florida for permission to resign, with leave to reapply in three years. The court granted the petition and deemed Richardson to have resigned.

The District of Columbia Court of Appeals thereupon temporarily suspended Richardson from the practice of law in the District, to enable the D.C. Board on Professional Responsibility to conduct reciprocal disciplinary proceedings against him. See *In the Matter of T. Carlton Richardson*, No. 95–BG–639 (D.C.App.1995). Richardson filed suit in federal district court alleging that his temporary suspension, and the D.C. Bar rule that permits it, see D.C.App.Rule XI § 11(d), unconstitutionally deprive him, without due process, of his liberty interest in practicing law.

The district court dismissed Richardson's claim against his suspension for want of jur-

isdiction under *District of Columbia v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983), and abstained from hearing his claim against the D.C. Bar rule itself under *Younger v. Harris*, 401 U.S. 37, 43–54, 91 S.Ct. 746, 750–55, 27 L.Ed.2d 669 (1971). Richardson appealed. Because the district court lacked jurisdiction to hear either of Richardson's claims, we affirm without reaching the issue of *Younger* abstention.

■ Richardson's complaint to the district court about the D.C. Court of Appeals's order falls squarely within the *Rooker–Feldman* doctrine, under which federal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts. See *Feldman; Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). Congress has vested federal court review of such decisions in the Supreme Court, see 28 U.S.C. § 1257, and *Rooker–Feldman* makes clear that that jurisdiction is exclusive.

Richardson does not deny that the order effecting his suspension was a judicial decision. Rather, he says that the order is merely interlocutory, and that *Rooker–Feldman*'s bar against district court jurisdiction was meant to apply only coextensively with the set of "final judgments or decrees rendered by the highest court of a State" reviewable by the Supreme Court under § 1257.

The District argues that the order of the D.C. Court of Appeals temporarily suspending Richardson is clearly a "final" decision for purposes of § 1257, much as the Georgia Supreme Court's reversal of the lower court's denial of a temporary injunction was final in *Construction Laborers v. Curry*, 371 U.S. 542, 548–552, 83 S.Ct. 531, 535–38, 9 L.Ed.2d 514 (1963). See also *Nat'l Socialist Party v. Skokie*, 432 U.S. 43, 44, 97 S.Ct. 2205, 2206, 53 L.Ed.2d 96 (1977) (reviewing as final a state supreme court's refusal to stay trial court's injunction pending appeal). Richardson's complaint is that his temporary suspension violates the Constitution, and its rejection by the D.C. Court of Appeals appears to be amenable to treatment as a final order: the issue is legally entirely separate from any claims to be resolved in the substantive

disciplinary proceedings that appear destined to follow; it has been finally resolved by the D.C. Court of Appeals; and it cannot be cured by any remedy given at the end of the substantive proceedings. See *Curry,* 371 U.S. at 549, 83 S.Ct. at 536; *Cohen v. Beneficial Industrial Loan Co.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949) (setting out the elements of this test); cf. *Board of Education v. Illinois State Board of Education,* 79 F.3d 654, 656–59 (7th Cir.1996) (finding an order appealable both as an appealable interlocutory order under 28 U.S.C. § 1292(a)(1) and as a "final" order under *Cohen* ).

Even if the suspension were not final for purposes of 28 U.S.C. § 1257, the district court would have lacked jurisdiction. We cannot imagine how one could reconcile *Feldman* 's reasoning, based as it is on allowing state courts to arrive at decisions free from collateral federal attack, with the idea that the district court would be free to review Richardson's suspension so long as the decision was *interlocutory.* Indeed, other circuits have persuasively concluded that the boundaries of § 1257's grant of Supreme Court jurisdiction do not prevent the application of *Rooker–Feldman* to the final decisions of *lower* state courts, or to state courts' interlocutory decisions. As the Fifth Circuit explained, discussing *Feldman,*

> [w]e hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system.

*Hale v. Harney,* 786 F.2d 688, 691 (5th Cir. 1986) (refusing to entertain constitutional challenge to state court divorce decree). See also *Keene Corp. v. Cass,* 908 F.2d 293, 297 & n. 2 (8th Cir.1990) (*Feldman* bars federal district court from hearing constitutional challenge to state court's discovery order); cf. *Port Auth. PBA v. Port Auth. of N.Y. & N.J.,* 973 F.2d 169, 177 (3rd Cir.1992) (*Rooker–Feldman* 's bar applies to decisions of lower state courts in addition to those of the highest one).

 Despite *Rooker–Feldman,* a federal district court may sometimes have jurisdiction to hear a challenge to a general bar rule promulgated by a state or District of Columbia court in a nonjudicial capacity. *Feldman,* 460 U.S. at 482–86 & n. 16, 103 S.Ct. at 1314–17 & n. 16. We thus turn to consider the district court's possible jurisdiction over Richardson's purportedly independent claims as to the constitutionality of the rule that the D.C. Court of Appeals applied. D.C.App. Rule XI § 11(d) provides:

> Upon receipt of a certified copy of an order demonstrating that an attorney ... has been suspended ... by a disciplining court outside the District of Columbia ..., the [D.C.] Court [of Appeals] shall forthwith enter an order suspending the attorney from the practice of law in the District of Columbia pending final disposition of any reciprocal disciplinary proceeding, and directing the attorney to show cause within thirty days from the date of the order why the identical discipline should not be imposed.

The principle allowing federal district court adjudication of attacks on bar *rules* would, of course, thoroughly undermine *Rooker–Feldman* if it encompassed claims that are "inextricably intertwined" with the *judicial actions* immunized under *Rooker–Feldman. Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16. In *Feldman* itself, attorneys who had not graduated from ABA-accredited law schools challenged both the District's refusal to waive the accreditation requirement (when, it was claimed, the District had done so for similarly situated applicants) and the rule under which the District generally refused to admit such applicants. The plaintiffs' attacks on the District rule were found to be extricable from the District's refusal to grant a waiver, as the former did not even contemplate the granting of a waiver. Thus, the core of plaintiffs' generalized challenge was independent of the specific decision to deny a waiver and the unequal treatment that it was claimed to demonstrate. *Id.* .at 487–88 & n. 18, 103 S.Ct. at 1317–18 & n. 18.

Richardson's attacks on § 11(d)'s constitutionality, however, are not merely intertwined with his attack on the decision to suspend him but are one and the same—namely, that application of § 11(d)'s proce-

dures (or lack of procedures) deprives him of his liberty interest in the practice of law without due process. His attack on the rule cannot be contemplated without his attack on his suspension. Absent any actual or imminent application to Richardson, it is doubtful that he would have standing to secure adjudication of his general due process claim. See *Levin v. Attorney Registration and Disciplinary Commission of the Supreme Court of Ill.,* 74 F.3d 763, 766–68 (7th Cir.1996) (after plaintiff was disbarred, he would lack the "personal stake" needed for an independent constitutional attack on state's rules concerning disbarment); see also *City of Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 1666–67, 75 L.Ed.2d 675 (1983) (plaintiff has no standing to seek injunctive relief against police chokehold practice without showing imminent application to himself); *Facio v. Jones,* 929 F.2d 541, 544–45 (10th Cir.1991) (plaintiff lacks standing to challenge state rules on default judgments, under which he lost a case, independent of his attempt to have the judgment against him undone). The *actual* application of § 11(d) is obviously encompassed in the Court of Appeals's order and review barred under *Feldman; imminent* application is not in the cards, as Richardson has already been suspended. By contrast, if the *Feldman* plaintiffs lost their attack on the court's denial of waivers of the accreditation rule, they might still be positioned to attack the rule itself.

The district court therefore lacked jurisdiction over Richardson's claims. Richardson is entitled to have his claims heard through the course of proceedings in the District of Columbia courts and, if unsatisfied, through petition for certiorari under 28 U.S.C. § 1257. The decision of the district court to dismiss his claims is therefore

*Affirmed.*