John STANTON, Appellant,

v.

DISTRICT OF COLUMBIA COURT OF APPEALS, Appellee

No. 96–7041.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 2, 1997.

Decided Oct. 17, 1997.

Rehearing Denied Dec. 3, 1997.

John Stanton, appearing pro se, argued the cause and filed the briefs for appellant.

Richard M. Wyner argued the cause for appellee. With him on the brief were Jo Anne Robinson, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, and Donna M. Murasky, Assistant Corporation Counsel, Washington, DC.

Before: WALD, WILLIAMS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

This case is the latest episode in a serial dispute between appellant John Stanton and the District of Columbia Court of Appeals ("DCCA"). Having been suspended from the bar under rules that did not automatically restore him on the lapse of his suspension, Stanton has thrice petitioned the DCCA for reinstatement. While the third petition was pending with that court, he filed suit in federal court posing constitutional challenges

both to the substantive provisions of the D.C. Rules of Professional Conduct (with which an applicant for reinstatement must be ready to comply in order to show fitness to practice), and to the procedures governing reinstatement.

The district court dismissed the claim on grounds of abstention under *Younger v. Harris,* 401 U.S. 37, 43–54, 91 S.Ct. 746, 750–55, 27 L.Ed.2d 669 (1971), because of the pending proceeding in the D.C. judicial system. But the *Younger* abstention has now been mooted by the end of that proceeding, *In re Stanton,* 682 A.2d 655 (D.C.1996), *cert. den.,* —— U.S. ——, 118 S.Ct. 67, —— L.Ed. —— (1997). So we would ordinarily vacate the district court's abstention disposition and remand the case. See *Wood v. Several Unknown Metropolitan Police Officers,* 835 F.2d 340, 342–44 (D.C.Cir.1987). Before doing so, however, we first inquire whether there are alternate grounds for affirming the dismissal. *Id.* at 343 (evaluating res judicata effect of concluded D.C. proceeding on appeal from *Younger* abstention). Cf. *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) (holding that "if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason"). Here the DCCA argues that we should affirm either because the district court lacked jurisdiction by virtue of the *Rooker–Feldman* doctrine's proscription of inferior federal court review of state judgments, or because Stanton's claims were barred by issue or claim preclusion. We find that *Rooker–Feldman* is indeed fatal to Stanton's substantive claim, but that neither it nor any preclusion doctrine disposes of the procedural claims. Accordingly we affirm in part and reverse in part.

\* \* \*

On November 30, 1983 the DCCA issued two orders suspending Stanton from the practice of law. In both cases it found Stanton guilty of "neglect of a legal matter entrusted to him," in violation of then-applicable Disciplinary Rule ("DR") 6–101(A)(3), and "intentional failure to seek a client's lawful objectives," in violation of DR 7–101(A)(1). The DCCA ordered concurrent suspensions of a year and a day, *In re Stanton,* 470 A.2d 272 (D.C.1983) ("*Stanton I*"), and of 60 days, *In re Stanton,* 470 A.2d 281 (D.C.1983) ("*Stanton II*"). The details of the incidents leading to the suspensions are set out in the reports of the D.C. Board on Professional Responsibility, published with the suspension orders. The deficiencies recounted include failure to seek bond reviews at the request of clients (evidently extending the clients' pretrial time in jail), failure to talk with clients about their cases, failure to investigate clients' cases, and finally, failure to assist clients who wished to plead guilty in their efforts to do so. The extra day of Stanton's year-and-a-day suspension is critical. Under rules then prevailing and continuing to govern attorneys suspended at that time, attorneys suspended for more than one year are not automatically restored to the bar on the lapse of their suspensions, but are required to file a petition for reinstatement; if denied reinstatement they may file their next petition no sooner than a year after the denial.[1] Stanton's reinstatement petitions having been uniformly denied, see *In re Stanton,* 532 A.2d 95 (D.C.1987) ("*Stanton III*"); *In re Stanton,* 589 A.2d 425 (D.C.1991) ("*Stanton IV*"); *In re Stanton,* 682 A.2d 655 (D.C.1996) ("*Stanton V*"), he remains under suspension.

Since the original year-and-a-day suspension, Stanton has filed many actions in local and federal courts, all so far unavailing. In the present case, he asserts three claims. First, he argues that certain of D.C.'s Rules of Professional Conduct, successors of the rules he was originally found to have violated, deprive D.C. bar members of rights of free expression protected by the First Amendment. He specifically attacks Rule 1.2(a), insofar as it requires that in "a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered," and Rule 1.3(a), which requires that a "lawyer shall

---

1. Current D.C. Bar Rule XI § 16(c) provides that reinstatement of attorneys suspended for more than one year prior to September 1, 1989 is governed by the requirements in effect at the time of the suspension. Accordingly, Stanton's case is governed by Rule XI § 21 of the prior rules.

represent a client zealously and diligently within the bounds of the law." As we shall see, these claims appear to be comprehensible—if at all—only in the context of Stanton's personal quarrel with the DCCA over the lawyer's role in the plea process.

In the procedural counts of his complaint, Stanton claims that the composition and procedures of the D.C. Board on Professional Responsibility violate the due process clause. (Stanton does not say, but he presumably means the due process clause of the Fifth Amendment, as it is that which applies to D.C.) On all three claims Stanton seeks declaratory relief.

\*　　\*　　\*

Because it is jurisdictional, we first consider the *Rooker–Feldman* doctrine, set forth in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is drawn from 28 U.S.C. § 1257, which channels directly to the Supreme Court all federal review of judicial decisions of state (and D.C.) courts of last resort. By making clear that the inferior federal courts lack jurisdiction over such decisions, *Rooker–Feldman* ensures that the Court's appellate jurisdiction is exclusive. See *Feldman,* 460 U.S. at 482, 103 S.Ct. at 1314–15. That Stanton's now-completed third reinstatement proceeding was judicial in nature is clear and undisputed. See, e.g., *Richardson v. District of Columbia Court of Appeals,* 83 F.3d 1513, 1514 (D.C.Cir.1996); see generally *Feldman,* 460 U.S. at 476–81, 103 S.Ct. at 1311–14.

■ In promulgating rather than applying bar rules, however, the DCCA acts in a legislative rather than a judicial capacity. Accordingly, a district court confronted with a simple challenge to the validity of such rules "is not reviewing a state-court judicial decision" and thus has subject matter jurisdiction. *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317. Applying *Rooker–Feldman* requires us to draw a line between permissible general challenges to rules and impermissible attempts to review judgments. And *Feldman* also tells us that even a constitutional claim pled as a general attack may be so "inextri-

cably intertwined" with a state court decision that "the district court is in essence being called upon to review the state-court decision." *Id.* at 483–84 n. 16, 103 S.Ct. at 1316 n. 16; see also *id.* at 486–87, 103 S.Ct. at 1316–17.

How to detect the fatal "intertwining"? In *Feldman* itself plaintiffs attacked both a general rule of the DCCA and the refusal of that court to grant plaintiffs a waiver. The Court found the attack on the rule independent enough, noting that the rule did not even contemplate the waiver procedure that plaintiffs claimed had been applied unevenly. *Id.* at 487–88 & n. 18, 103 S.Ct. at 1317–18 & n. 18. Thus, as we said in *Richardson,* "the core of plaintiffs' generalized challenge was independent of the specific decision to deny a waiver." 83 F.3d at 1515 (emphasis added). Cf. *Levin v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Ill.,* 74 F.3d 763, 766 (7th Cir.1996) (distinguishing "between plaintiffs who claim their injuries are directly attributable to an erroneous state court decision and plaintiffs who claim injury independent of any state court judgment"); see also *GASH Associates v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir.1993); David P. Currie, "Res Judicata: The Neglected Defense," 45 U. Chi. L.Rev. 317, 324–25 (1977).

■ None of Stanton's three claims lends itself to easy classification. The First Amendment count's assertion that Rules 1.2(a) and 1.3(a) "restrict and curtail expression and practice of the dissident," Complaint ¶ 22, seems to pose a general challenge. And Stanton's request for a declaration that the rules are "in violation of the federal right to freedom of expression," *id.* p. 6, bespeaks a claim independent of his personal situation. Cf. *Centifanti v. Nix,* 865 F.2d 1422, 1429 (3rd Cir.1989) (noting plaintiff's quest for declaratory relief as well as generalized character of the injunction sought). But the Complaint stresses that the Board on Professional Responsibility—which initially handles petitions for reinstatement and forwards its findings and recommendations to the DCCA—was at the time of Stanton's federal complaint recommending denial of reinstatement "because

of [plaintiff's] strongly-held philosophical opinions and beliefs regarding guilty pleas in criminal prosecutions." Complaint ¶ 21. Stanton's "belief," which he thinks these rules unconstitutionally trammel, appears to be that a lawyer's advocacy of a guilty plea somehow denies the accused his rights "to freedom from involuntary self-incrimination and to assistance of counsel." *Id.* The only intelligible reading of Stanton's complaint is as a claim that the Board's negative recommendation grew out of the challenged rules. (The Board's findings and recommendations have not been filed in this case.) Partly because Stanton's pleading and briefing leave us somewhat baffled at how any facial First Amendment attack on the two rules might be framed, we conclude that there is no substance to Stanton's First Amendment claim other than his challenge to the DCCA's application of the disciplinary rules in his case. Thus the "core" of the claim cannot be considered independent of the DCCA's adoption of the Board's specific recommendation. See *Stanton V*, 682 A.2d at 656–60; see also *Richardson*, 83 F.3d at 1515. Because the First Amendment claim is inextricably intertwined with that judgment, we hold that the district court lacked subject matter jurisdiction over this count of the complaint and affirm its dismissal.

■■ Stanton's articulation of his procedural theories is also multidirectional. On the one hand he notes that the DCCA has *processed* his reinstatement petitions under what he says are defective procedures, Complaint ¶ 6, and he devotes a good deal of energy to claiming that the *operations* of the Board, presumably as manifested in its proceedings on his many petitions, violate *D.C.* law (evidently believing, contrary to any number of cases,[2] that a state's violation of its own procedures is ipso facto a violation of the federal Constitution), Complaint ¶¶ 10–14. But on the other hand much of his complaint is framed in very general terms, attacking the absence of notice to the public in the process of appointing Board members, *id.* ¶ 9, and challenging what he characterizes as the unduly "limited review" powers of the

DCCA over the Board, *id.* ¶ 18. These contentions seem perfectly able to stand on their own feet, as would any facial challenge to agency rules brought under the relatively relaxed ripeness requirements of *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Because a discernible core of these claims stands independent of the DCCA's past rulings on Stanton's efforts at reinstatement, we believe that *Rooker–Feldman* does not deprive the district court of jurisdiction over them.

\* \* \*

■■ We now turn to the DCCA's arguments that the judgments in those proceedings bar the current challenges, either on the ground that Stanton raised them and lost on the merits (issue preclusion), or on the ground that they were part of his earlier claims, so that he is barred for failure to raise them then (claim preclusion). At the outset Stanton objects that the DCCA did not plead res judicata before the trial court and hence cannot do so before us. Res judicata is an affirmative defense that may be lost if not pleaded in the answer; it may not ordinarily be asserted for the first time on appeal. See *Poulin v. Bowen*, 817 F.2d 865, 869 (D.C.Cir.1987); Federal Rule of Civil Procedure 8(c).

This case, however, comes to us following the DCCA's successful pre-answer motion to dismiss under Rules 12(b)(1) and 12(b)(6); no answer has yet been filed. Cf. *Harris v. U.S. Department of Veterans Affairs*, 126 F.3d 339 (D.C.Cir.1997) (where answer had been filed without raising a Rule 8(c) defense, the defendant could not raise it without securing leave to amend answer). It is true, of course, that courts have allowed parties to assert res judicata by dispositive motions under these rules. See, e.g., *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981) (citing cases); *Riddle v. National Railroad Passenger Corp.*, 869 F.Supp. 40, 42 (D.D.C.1994) (granting motion to dismiss on res judicata grounds);

---

**2.** See, e.g., *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991); *Brandon v. District of Columbia Board of Parole*,

823 F.2d 644, 649 (D.C.Cir.1987); see also *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 402–03, 88 L.Ed. 497 (1944).

*McLaughlin v. Bradlee,* 599 F.Supp. 839, 850 (D.D.C.1984) (granting 12(b)(6) motion on res judicata grounds). Thus the DCCA did have an opportunity to make this argument below. Yet if a party that fails to assert res judicata in a Rule 12(b)(6) motion is sleeping on its rights, it is an inconsequential catnap; we know of no case in which a court has prevented a party from pleading res judicata in its answer simply because it failed to do so in an earlier motion to dismiss. Cf. *English v. Dyke,* 23 F.3d 1086, 1090 (6th Cir.1994) (holding that failure to raise qualified immunity defense in pre-answer motion does not waive right to assert it on post-answer motion). (Indeed, had the DCCA asserted res judicata in its motions, the District Court, correctly resolving jurisdictional questions first, would not have been able to reach the issue.) If prevented from making its res judicata arguments to us on this appeal, the DCCA could simply present them in its answer on remand.

We can conceive of no reason for such judicial volleyball. Stanton, who argues the question of res judicata forcefully in his reply brief, Reply Br. at 6–9, suggests no way in which our resolution of the issue on appeal would prejudice him. And while res judicata exists in part to shield parties from duplicative and vexatious litigation, the interests that courts protect are also often their own—or, more precisely, those of society. " 'Courts today are having difficulty giving a litigant one day in court. To allow that litigant a second day is a luxury that cannot be afforded.' " *National Treasury Employees Union v. I.R.S.,* 765 F.2d 1174, 1177 (D.C.Cir.1985) (quoting C. Wright, Law of Federal Courts 678 (4th ed.1983)).

■ As res judicata belongs to courts as well as to litigants, even a *party*'s forfeiture of the right to assert it—which has not happened here because the defendant remains free to file an answer—does not destroy a *court*'s ability to consider the issue sua sponte. See *Nixon v. United States,* 978 F.2d 1269, 1297 (D.C.Cir.1992) (Henderson, J., concurring); cf. *Bechtold v. City of Rosemount,* 104 F.3d 1062, 1068 (8th Cir.1997) (appellate court may raise res judicata sua sponte to affirm district court); *Russell v.*

*SunAmerica Securities, Inc.,* 962 F.2d 1169, 1172 (5th Cir.1992) (same). In the circumstances of this case, where there is no prejudice to the plaintiff, no forfeiture has yet occurred, the relevant facts stand uncontroverted in the record before us, and denial would only engender delay, we are willing to consider the defense for the first time on appeal.

■ We give judgments of other courts the same preclusive effect as would the issuing court—in this case, the D.C. Court of Appeals. See 28 U.S.C. § 1738; *Matsushita Elec. Industrial Co. v. Epstein,* —— U.S. ——, ——, 116 S.Ct. 873, 877, 134 L.Ed.2d 6 (1996). The DCCA (as litigant before us) suggests that in its adjudication of Stanton's reinstatement petitions, it has already declared his current constitutional claims barred by res judicata. The decisions do not in fact do so.

The DCCA has considered and rejected three of Stanton's reinstatement petitions. See *Stanton III; Stanton IV; Stanton V.* In the first and third of these, Stanton raised constitutional arguments that the court refused to consider on res judicata grounds. See *Stanton III,* 532 A.2d at 96; *Stanton V,* 682 A.2d at 656 n. 4. But, although the petitions were for *reinstatement,* the challenges that the DCCA barred under res judicata were ones directed at the original *suspension* proceeding, proposing by way of relief that the suspension order be vacated or rescinded. And each was held precluded by Stanton's failure to raise it as a defense at his suspension hearing. The claims now before us, by contrast, are directed at general aspects of the *reinstatement* proceedings and seek only prospective relief. The DCCA has not considered them. We thus conduct our own inquiry into whether D.C. res judicata principles preclude them.

■ First, we note that because the D.C. courts have never considered Stanton's due process claims on the merits, there is no possibility that *issue* preclusion would bar them. Issues may be deemed identical even though their factual contexts and underlying claims differ. See Restatement (Second) of Judgments § 27 comment c (1982) (factors

suggesting identity of issues include overlap between evidence and argument to be advanced, application of same rule of law, and relation between claims involved). Thus Stanton's current attacks on the reinstatement procedures could involve the same issues as his earlier attacks on the suspension procedures. But the decisions in *Stanton III* and *Stanton V* rejected the challenges because of Stanton's failure to raise them in the suspension proceedings, not because of any prior merits rejection—i.e., applying claim preclusion, not issue preclusion. Thus, assuming that there was sufficient identity in principle between Stanton's due process attacks on D.C.'s suspension procedure and those on its reinstatement procedure for issue preclusion to be even conceivable, the lack of merits consideration defeats any application of issue preclusion.

 The general principle of claim preclusion is that a final, valid judgment on the merits precludes any further litigation between the same parties on the same cause of action.[3] Jurisdictions differ as to its reach largely because they start from different understandings of the scope of a "cause of action." The District of Columbia, like the majority of jurisdictions, has adopted the Second Restatement's "transactional" approach under which a " 'cause of action,' for purposes of claim preclusion, comprises 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.' " *Smith v. Jenkins,* 562 A.2d 610, 613 (D.C. 1989) (quoting Restatement (Second) of Judgments § 24(1) (1982)). "What factual grouping constitutes a 'transaction' and what groupings constitute a 'series,' " the Restatement continues, "are to be determined pragmatically," considering "whether the facts are related in time, space, origin, or motiva-tion, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at § 24(2).

Admonitions to pragmatism do not decide cases, and this standard is obviously far from self-explanatory. Nor have the D.C. courts specifically articulated how they would treat a plaintiff's general prospective challenge to procedural rules that governed prior proceedings in which the plaintiff could have raised identical points. We thus look for guidance to broader principles of claim preclusion, and here the federal courts are instructive.[4]

Federal law is clear that post-judgment *events* give rise to new claims, so that claim preclusion is no bar. Thus, if the plaintiff alleges a combination in restraint of trade, a new cause of action accrues each time it operates against him, and previous judgments do not bar repeated challenges. *Lawlor v. Nat'l Screen Service Corp.,* 349 U.S. 322, 327–28, 75 S.Ct. 865, 868–69, 99 L.Ed. 1122 (1955) (1943 judgment against plaintiff's antitrust claims does not bar claims for identical conduct occurring thereafter). See also *Cellar Door Productions, Inc. v. Kay,* 897 F.2d 1375, 1377–78 (6th Cir.1990); *Page v. United States,* 729 F.2d 818, 820 (D.C.Cir. 1984). But see *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.,* 892 F.2d 355, 359 (4th Cir.1989) (holding that continued application of policies challenged in prior litigation does not create new cause of action).

 Similarly, each successive enforcement of a statute—such as each year a taxpayer is subjected to a tax—creates a new cause of action. *Commissioner v. Sunnen,* 333 U.S. 591, 597–99, 68 S.Ct. 715, 719–20, 92

---

3. "Cause of action" and "claim" alternate throughout the caselaw. We use them interchangeably, following the cases discussed.

4. The D.C. law of claim preclusion does not differ significantly from the federal. D.C. courts articulating the doctrine commonly cite federal cases applying federal law. See, e.g., *Smith v. Jenkins,* 562 A.2d 610, 613 (D.C.1989) (quoting *Lawlor v. Nat'l Screen Service,* 349 U.S. 322, 326, 75 S.Ct. 865, 867–68, 99 L.Ed. 1122 (1955));

*Stutsman v. Kaiser Foundation Health Plan of the Mid–Atlantic States,* 546 A.2d 367, 370 (D.C. 1988) (citing *Page v. United States,* 729 F.2d 818, 820 (D.C.Cir.1984)). We have said that "we can discern no material differences in the District of Columbia's law of res judicata and the federal common law of res judicata." *U.S. Industries, Inc. v. Blake Construction Co.,* 765 F.2d 195, 204 n. 20 (D.C.Cir.1985).

L.Ed. 898 (1948). And a number of cases hold that a criminal conviction under a statute leaves the defendant free not only to invoke new constitutional defenses against the statute in a subsequent criminal case but also to initiate an action seeking declaratory or injunctive relief against future applications of the statute. See *Brown v. Scott,* 462 F.Supp. 518, 520 (N.D.Ill.1978) (holding that guilty plea will not prevent defendant from asserting statute's unconstitutionality in suit for declaratory judgment on future prosecutions, and noting that the plea would not bar the defense in a trial for a later violation), rev'd on other grounds, 602 F.2d 791 (7th Cir.1979), aff'd. sub nom. *Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Mustfov v. Superintendent of Chicago Police Dep't,* 733 F.Supp. 283, 292 (N.D. Ill.1990); *Maynard v. Wooley,* 406 F.Supp. 1381, 1385 n.6 (D.N.H.1976), aff'd. *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); cf. *Wooley,* 430 U.S. at 710, 97 S.Ct. at 1433 (distinguishing between suits requesting prospective and retrospective relief under *Younger* doctrine).

■■■ In civil litigation, too, parties may raise new issues in actions seeking to alter the playing field for future litigation, despite failure to raise them in past retrospective lawsuits. Thus in *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86 (2d Cir.1997), the Second Circuit held that claim preclusion did not bar a suit for a declaration that a New York statute was unconstitutional, where plaintiff had previously been held liable under the statute and could have raised unconstitutionality as a defense. Cf. *Family Division Trial Lawyers of the Superior Court–D.C., Inc. v. Moultrie,* 725 F.2d 695, 704 (D.C.Cir.1984) (observing that "we might hesitate" to apply claim preclusion to constitutional attacks that a party "could have brought but did not" in litigation over past transactions).

■■■ Given these precedents, Stanton's participation in prior proceedings in which facial challenges could have been raised does not prevent him from raising those challenges now, so long as they concern post-judgment events. And in fact they do: the procedures that he assails will govern future petitions for reinstatement. To put the conclusion into the standard "cause of action" language: Litigation of the validity of one past course of conduct is not the same "claim" as either (1) litigation over the validity of similar conduct occurring after the acts covered by the initial litigation (see *Lawlor,* 349 U.S. at 327–28, 75 S.Ct. at 868–69; *Sunnen,* 333 U.S. at 597–600, 68 S.Ct. at 719–21); or (2) litigation challenging a rule in anticipation of its possible application to similar events occurring or expected to occur after the earlier lawsuit (see *Interoceanica,* 107 F.3d at 90–91; *Maynard,* 406 F.Supp. at 1385 n. 6; *Brown,* 462 F.Supp. at 520).

We needn't consider here whether claim preclusion ever permits two successive facial attacks on a statute. In characterizing the enactment of an ordinance as the "transaction" giving rise to a facial challenge, one court has concluded that at least the normal result would be a bar. *J.B.K., Inc. v. City of Kansas City,* 641 F.Supp. 893, 900 (W.D.Mo. 1986). Assuming the correctness of that view, it may seem anomalous that a party litigating successive *applications* should be afforded greater leeway to discover new theories as time and circumstances march on. One answer might be that a party raising a facial challenge has enjoyed exceptional freedom to select the time (and perhaps forum) of litigation, and should reasonably be viewed as seeking a judgment on all future applications, except as future facts may vary. By contrast, one should perhaps be free to litigate a specific denial without the lawsuit's acquiring such an omnivorous (and costly) character. Of course a party who falsely packaged successive facial attacks in successive retrospective litigations would run the risk of the court's penetrating his cover. Here, however, we have the standard case of an initial facial attack following prior retrospective litigation, since the portions of Stanton's complaint that survive *Rooker–Feldman* are necessarily free of particularized and retrospective elements drawn from his special circumstances.

We find that neither *Rooker–Feldman* nor claim preclusion bars Stanton's due process claims. Accordingly, while we affirm the district court's dismissal of the First Amend-

ment claim, on *Rooker–Feldman* rather than *Younger* grounds, we reverse the judgment regarding Stanton's procedural claims and remand the case for further proceedings consistent with this opinion.

*So ordered.*