# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 21, 2016　　　　Decided March 3, 2017

No. 14-7164

ROBERT LEE JOHNSON,
APPELLANT

v.

INTERSTATE MANAGEMENT COMPANY, LLC, DOING BUSINESS
AS HAMILTON CROWNE PLAZA HOTEL,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01702)

———

*Ruthanne M. Deutsch*, Supervising Attorney, appointed by the court, argued the cause as *amicus curiae* on behalf of appellant.  With her on the briefs were *Steven H. Goldblatt*, appointed by the court, and *Katherine Connolly*, *Lauren Ige*, and *David Kanter*, Student Counsel.

*Nicholas T. Moraites* argued the cause for appellee.  With him on the brief was *Edward R. Noonan*.

Before: HENDERSON, KAVANAUGH, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* HENDERSON joins, and with whom *Circuit Judge* MILLETT joins as to Part I, Part II, and footnote 2 of Part III.

Opinion concurring in part and concurring in the judgment filed by *Circuit Judge* MILLETT.

KAVANAUGH, *Circuit Judge*:  Robert Johnson was a cook at a Washington, D.C., hotel managed by Interstate Management Company.  Over several years, Interstate repeatedly reprimanded Johnson for a variety of unsanitary cooking and cleaning practices in the hotel kitchen.  In 2011, after concluding that Johnson had prepared a serving of breaded chicken with a piece of plastic melted under the breading, Interstate finally decided that enough was enough. Interstate fired him.

Johnson does not believe that his history of unsanitary kitchen practices was the real reason he was fired.  Instead, Johnson says that Interstate retaliated against him because he had previously complained (i) to the Occupational Safety and Health Administration about allegedly unsafe workplace conditions at the hotel and (ii) to the Equal Employment Opportunity Commission about alleged employment discrimination by the hotel.

After he was fired, Johnson sued Interstate and raised two claims relevant to this appeal.  *First*, Johnson asserted a retaliation claim under Section 11(c) of the Occupational Safety and Health Act.  *See* 29 U.S.C. § 660(c).  Johnson alleged that Interstate fired him in retaliation for his filing of a complaint against Interstate with the Occupational Safety and Health Administration.  The District Court dismissed that claim, holding that Section 11(c) does not provide a private

cause of action for retaliation claims. *Second*, Johnson advanced a retaliation claim under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. *See* 29 U.S.C. § 623(d); 42 U.S.C. §§ 2000e-3(a), 12203(a). Johnson alleged that Interstate fired him in retaliation for his filing of a discrimination complaint against Interstate with the EEOC. The District Court granted summary judgment to Interstate on Johnson's EEOC retaliation claim, concluding that Johnson did not present sufficient evidence for a reasonable jury to find that Interstate's stated reason for firing Johnson was a pretext for retaliation.

We agree with the District Court, and we affirm.

I

From 1996 until 2011, Robert Johnson was a cook at the Hamilton Crowne Plaza Hotel in Washington, D.C. The hotel is managed by Interstate Management Company.

In 2007, Johnson started receiving a steady stream of warnings from Interstate about his unsatisfactory job performance. Johnson was cited at different times for incorrectly filling out his time sheets, violating the company's anti-harassment policy, leaving water running in the kitchen, cleaning floor mats inside cooking pots, creating cross-contamination hazards while preparing meat, following improper procedures for thawing fish, and using the wrong ingredients when preparing meals.

The warnings did not do much. In March 2010, Johnson was suspended for undercooking chicken served at a 250-person banquet. He was later reinstated with a "final warning": "Any violation of any standard of conduct will

result in immediate termination of employment." Counseling/Disciplinary Record (Mar. 8, 2010), J.A. 522. Johnson's violations nonetheless persisted. Several months after Johnson's reinstatement, Interstate cited Johnson for thawing frozen chicken in a sink, cooling soup improperly, and setting off a fire alarm by allowing too much smoke to accumulate in the kitchen grill.

In February 2011, a hotel employee discovered plastic wrap melted under the breading of a piece of cooked chicken that was served for dinner. Interstate conducted an investigation and concluded that Johnson cooked the chicken with the plastic in it. Relying on the company's investigation and Johnson's documented history of "repeated performance failings," the Human Resources Director at the hotel, Vanessa Peters, fired Johnson. Declaration of Vanessa R. Peters ¶ 8 (Nov. 22, 2013), J.A. 509. By the time Interstate fired Johnson, Johnson had violated company policy on at least 13 separate occasions.

Johnson traces his firing to a different cause. Over the years, Johnson had complained a number of times about Interstate to the Equal Employment Opportunity Commission and to the Occupational Safety and Health Administration. In 2005, 2007, and 2010, Johnson filed discrimination complaints with the EEOC. Those complaints were unsuccessful. In February 2010, Johnson complained to the Occupational Safety and Health Administration about allegedly unsafe working conditions at the hotel, resulting in a $34,200 fine against Interstate.

Johnson says that his complaints to the EEOC and the Occupational Safety and Health Administration, not his infractions in the kitchen, were the real reason he was fired.

Therefore, after being fired, Johnson sued Interstate. As relevant here, Johnson raised two different retaliation claims.

*First*, Johnson alleged that Interstate fired him in retaliation for his filing of a complaint with the Occupational Safety and Health Administration about allegedly unsafe working conditions at the hotel. He brought that claim under Section 11(c) of the Occupational Safety and Health Act. *See* 29 U.S.C. § 660(c). The District Court dismissed that retaliation claim, concluding that the Act does not provide a private cause of action for retaliation claims.

*Second*, Johnson alleged that Interstate terminated him in retaliation for his 2010 EEOC complaint, in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. 29 U.S.C. § 623(d); 42 U.S.C. §§ 2000e-3(a), 12203(a). On that claim, the District Court granted summary judgment to Interstate. The District Court ruled that Johnson presented insufficient evidence for a reasonable jury to conclude that Interstate's stated reason for firing Johnson was not its actual reason.

Johnson appealed. Our review of the District Court on both issues is de novo.

II

We first address Johnson's claim that Interstate fired him in retaliation for his filing of a complaint with the Occupational Safety and Health Administration. Johnson brought his retaliation claim under Section 11(c) of the Occupational Safety and Health Act. *See* 29 U.S.C. § 660(c). Johnson may maintain a claim under Section 11(c) only if Section 11(c) contains a private cause of action.

As relevant here, Section 11(c)(1) prohibits employers from retaliating against employees for reporting violations of the Occupational Safety and Health Act: "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." *Id.* § 660(c)(1).

Section 11(c)(2) supplies a remedy for employees who believe they have been subject to retaliation for reporting a violation of the statute: An employee may complain to the Secretary of Labor. And the Secretary of Labor, after investigating the employee's complaints, may sue the employer in federal court on the employee's behalf. *Id.* § 660(c)(2). Section 11(c)(2) provides in relevant part:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person.

*Id.*

Although Section 11(c) affords the Secretary of Labor a cause of action, the text of Section 11(c) does not *expressly* grant employees a private cause of action for retaliation

claims. Therefore, the question is whether a private cause of action is *implied* by the statute. The answer is no.

Congress creates federal causes of action. If the text of a statute does not provide a cause of action, there ordinarily is no cause of action. To be sure, on rare occasions, the Supreme Court has recognized *implied* causes of action. To support an implied cause of action, the relevant statute must demonstrate Congress's intent – notwithstanding the lack of an express cause of action – to create a "private right" and a "private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

The high-water mark for implied causes of action came in the period before the Supreme Court's 1975 decision in *Cort v. Ash*, 422 U.S. 66 (1975). But since *Cort v. Ash*, the Supreme Court has been very hostile to implied causes of action. *See, e.g.*, *Horne v. Flores*, 557 U.S. 433, 456 n.6 (2009); *Sandoval*, 532 U.S. at 293; *Suter v. Artist M.*, 503 U.S. 347, 364 (1992); *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 536 (1989); *Thompson v. Thompson*, 484 U.S. 174, 187 (1988); *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 148 (1985); *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 18 (1981); *California v. Sierra Club*, 451 U.S. 287, 298 (1981); *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77, 94-95 (1981); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979); *cf. Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996) (recognizing an implied cause of action under Section 10 of the Voting Rights Act); *see generally* Jonathan A. Marcantel, *Abolishing Implied Private Rights of Action Pursuant to Federal Statutes*, 39 J. Legis. 251, 271 (2012-2013) (implied causes of action are "isolated, remote possibilities" under

Supreme Court case law); Lumen N. Mulligan, *Federal Courts Not Federal Tribunals*, 104 Nw. U. L. Rev. 175, 178 (2010) ("[T]he Court has significantly restricted the practice of inferring causes of action from statutes."); Donald H. Zeigler, *Rights, Rights of Action, and Remedies: An Integrated Approach*, 76 Wash. L. Rev. 67, 91 (2001) ("[R]equiring clear evidence of congressional intent to create a private right of action ensures that few will be found.").

The reason for the Supreme Court's hostility to implied causes of action is evident:  To recognize an implied cause of action, we have to conclude that Congress *intended* to provide a cause of action even though Congress did not expressly say as much in the text of the statute.  Especially as statutes are interpreted these days, that is a high bar to clear.  *See generally Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material."); WILLIAM N. ESKRIDGE JR., INTERPRETING LAW: A PRIMER ON HOW TO READ STATUTES AND THE CONSTITUTION 33 (2016) ("The prime directive in statutory interpretation is to apply the meaning that a reasonable reader would derive from the text of the law."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.").

In this case, we decline to recognize a new implied cause of action under Section 11(c).  The text of Section 11(c) specifically addresses who may sue.  The statute grants such authority to the Secretary of Labor, not to private parties.  *See* 29 U.S.C. § 660(c)(2).  As the Supreme Court has explained:  "The express provision of one method of enforcing a

substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Recognizing that his argument for an implied cause of action faces an uphill climb, Johnson more narrowly argues that Congress adopted Section 11(c) in 1970, at a time when the Supreme Court readily recognized implied causes of action. Johnson points out that it was not until 1975 in *Cort v. Ash*, 422 U.S. 66, that the Supreme Court clamped down on implied causes of action. So Johnson says that Congress in 1970 would have expected that Section 11(c) would create a private cause of action for retaliation claims, even though Congress did not actually say as much in the text of the statute.

But the Supreme Court has rejected that kind of time-travel argument before, and we must reject it now. *See Sandoval*, 532 U.S. at 287-88. The Supreme Court in *Sandoval* stated that statutes enacted during "the *ancien regime*" that predated *Cort* are still subject to the Supreme Court's later and more restrictive approach to implied causes of action. *Id.* at 287. When courts determine whether there is an implied cause of action, there is not a more relaxed rule for statutes enacted before 1975 and a tougher rule for statutes enacted after 1975. We apply the tougher rule to all statutes.

Johnson also cites the history of the Occupational Safety and Health Act, tracing its development from proposal to passage. But when statutory text resolves the issue, as it does here, the Supreme Court has said that we need not dig into the legislative history. *See id.* at 288 n.7. In any event, Johnson has not identified any committee report or statement by a Member of Congress suggesting that there is a private cause of action under Section 11(c).

Finally, Johnson advances several policy arguments supporting a private cause of action under Section 11(c).  But those policy arguments are best addressed to Congress, not the courts.  Nothing in our decision prevents Congress from affording employees the right to sue in federal court for retaliation claims.  But unless and until Congress acts, our hands are tied.

We affirm the District Court's dismissal of Johnson's Section 11(c) retaliation claim.[1]

### III

Johnson also argues that Interstate violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination in Employment Act.  In particular, Johnson contends that he was fired in retaliation for making an employment discrimination claim to the EEOC. *See* 29 U.S.C. § 623(d); 42 U.S.C. §§ 2000e-3(a), 12203(a).

Title VII of the Civil Rights Act, the ADA, and the ADEA all provide an express cause of action for aggrieved employees to bring retaliation claims in federal court. *See* 29 U.S.C. § 626(c); 42 U.S.C. §§ 2000e-5(f), 12203(c).  The question is whether Johnson produced sufficient evidence to support his retaliation claim.  In the District Court, Interstate moved for summary judgment.  After viewing the facts in the light most favorable to Johnson, the District Court concluded

---

[1] Interstate argues in the alternative that res judicata forecloses Johnson's Section 11(c) retaliation claim.  Res judicata is a non-jurisdictional affirmative defense. *See Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 76-77 (D.C. Cir. 1997).  Because we conclude that Section 11(c) does not supply a cause of action for Johnson's retaliation claim, we need not address Interstate's res judicata argument.

that Johnson failed to present sufficient evidence to overcome summary judgment. We agree.

Whether brought under Title VII, the ADA, or the ADEA, retaliation claims are analyzed under the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (retaliation claims under Title VII and ADEA); *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (retaliation claims under ADA); *see generally Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008) (identifying the framework for Title VII claims). Once the employer has asserted a legitimate, non-retaliatory reason for firing an employee, the central question at the summary judgment stage becomes whether the employee has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-retaliatory reason was not the actual reason" and that the employer fired the employee as retaliation. *Hernandez v. Pritzker*, 741 F.3d 129, 133 (D.C. Cir. 2013); *see Brady*, 520 F.3d at 494.

Interstate has offered a legitimate, non-retaliatory reason for firing Johnson. Interstate's Human Resources Director, Vanessa Peters, stated that Johnson lost his job because of his "repeated performance failings and workplace deficiencies" at the hotel, culminating in his alleged preparation of a breaded chicken breast with plastic melted under the breading. Declaration of Vanessa R. Peters ¶ 8 (Nov. 22, 2013), J.A. 509. Johnson does not dispute that Interstate's allegations, if true, would constitute a legitimate basis for firing a kitchen employee at the hotel.

Because Interstate has offered a legitimate, non-retaliatory justification for firing Johnson, we turn to the central question: Has Johnson produced enough evidence for

a reasonable jury to conclude that Interstate's explanation for firing him was mere pretext? In other words, has Johnson produced enough evidence for a reasonable jury to conclude that Interstate is lying about the real reason it fired Johnson? If so, then Johnson can surmount summary judgment.

In this case, the record does not reveal any direct evidence of retaliation – for example, any statements by Interstate employees indicating retaliatory intent – that would alone suffice for Johnson to get past summary judgment. But Johnson argues that there is indirect evidence of retaliation. In particular, Johnson asserts that Interstate's evidence does not support its stated reason for firing him, and that the stated reason therefore must be a pretext for retaliation.

Johnson is wrong. The record contains a plethora of evidence that backs up Interstate's stated reason for firing Johnson. Interstate's business records indicate that Johnson violated company policy on at least 13 separate occasions. From 2007 to 2011, Johnson was cited for: (1) incorrectly filling out his time sheets; (2) violating the company's anti-harassment policy; (3) leaving water running in the kitchen; (4) cleaning floor mats inside cooking pots; (5) working for less time than suggested on his time sheets; (6) creating cross-contamination hazards while preparing meat; (7) following improper procedures for thawing fish; (8) using the wrong ingredients when preparing meals; (9) undercooking chicken served at a 250-person banquet, and cooking vegetables without removing the product stickers; (10) thawing frozen chicken in a sink; (11) improperly cooling soup; (12) setting off a fire alarm by allowing too much smoke to accumulate in the kitchen grill; and (13) preparing a serving of breaded chicken with a piece of plastic melted under the breading. Some of those violations of company policy could have

seriously imperiled the safety (not to mention the appetites) of the hotel's customers.

Johnson offers minimal evidence to dispute those 13 alleged infractions. Indeed, for almost all of the 13 infractions, Johnson simply says that the hotel's contemporaneous reports on the infractions were inaccurate. But Johnson does little aside from claiming that he did not commit the infractions and pointing to the fact that he did not sign the infraction reports. Johnson does not provide evidence that is sufficient for purposes of summary judgment to cast doubt on the adverse employment record established by the large volume of infraction reports.

For the last of the 13 alleged infractions, Johnson more strenuously contests Interstate's allegations, but not in a way that suffices to overcome summary judgment. Johnson says that he did not cook a chicken with plastic under the breading because his time sheet indicates that he left work by 1:30 p.m. on the day the chicken was served for dinner. But the key for that incident is when the chicken was cooked, not when it was served. The chicken with plastic under the breading could have been cooked before 1:30 p.m., even if it was to be served for dinner. The hotel looked into the matter and concluded that Johnson had prepared that particular chicken. Johnson has not produced sufficient evidence to demonstrate that the chicken was cooked by other kitchen employees after Johnson left for the day.

In sum, on this record, a reasonable jury could not conclude that Interstate's reason for firing Johnson was pretextual. If anything, the record suggests that Interstate was

exceedingly patient with Johnson's pattern of workplace errors.[2]

\* \* \*

We affirm the judgment of the District Court.

*So ordered.*

---

[2] Even if Johnson had produced sufficient evidence to dispute whether the infractions occurred, Johnson did not provide sufficient evidence to call into question whether hotel management "*honestly and reasonably believed*" that the infractions occurred. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 496 (D.C. Cir. 2008). Therefore, for that additional reason, Johnson's claim would not overcome summary judgment.

MILLETT, *Circuit Judge*, concurring in part and concurring in the judgment: I agree with the majority opinion that Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c), does not contain a private right of action for retaliation claims. I also agree that we should affirm the district court's grant of summary judgment for Interstate Management Company on Johnson's retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), the Americans with Disabilities Act, 42 U.S.C. § 12203(a), and the Age Discrimination in Employment Act, 29 U.S.C. § 623(d). While I disagree with much of how Section III of the majority opinion analyzes the summary judgment record, I agree with the statement in footnote 2 that Johnson did not come forward with sufficient evidence from which a reasonable jury could have concluded that Interstate did not "honestly and reasonably believe[]" he engaged in the employment misconduct in question. *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 496 (D.C. Cir. 2008) (emphasis omitted). I accordingly join Part III of the majority opinion only as to footnote 2.